**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| Jeffrey Reece, | : | |
| | : | **Case No.: 2:18-cv-1466** |
| Plaintiff, | : | |
| | : | **JUDGE** |
| v. | : | |
| | : | **Magistrate Judge** |
| PPG Industries Ohio, Inc., | : | |
| | : | |
| Defendant. | : | **JURY DEMAND** |
| | : | **ENDORSED HEREON** |
| | : | |

**COMPLAINT**

**Preliminary Statement**

1.      This action arises out of Defendant PPG Industries Ohio, Inc.'s (PPG) workplace discrimination against Plaintiff Jeffrey Reece (Reece) based on Plaintiff's race, African-American, and retaliation against Plaintiff by Defendant for engaging in protected activity.  Defendant's race-based discrimination and retaliation against Plaintiff violate Title VII of the 1964 Civil Rights Act, Title 42 U.S.C. §§ 2000e, *et seq.* and Ohio Revised Code §§ 4112, *et seq.*

**Prerequisites**

2.      Plaintiff has met statutory requirements for filing suit.  He filed two timely charges with the United States Equal Employment Opportunity Commission (EEOC). Regarding Plaintiff's first EEOC Charge, number 846-2016-14799, Plaintiff Reece alleged Defendant PPG discriminated against him because of his race, Black, and in retaliation for engaging in protected activity, when he was singled out, subjected to a hostile work environment, denied overtime, and disciplined, in violation of Title VII.  The EEOC's

investigation concluded that Defendant PPG failed to maintain personnel and employment records in accordance with the EEOC's Procedural Regulations, 29 CFR § 1602.14, in violation of Title VII.  Regarding Plaintiff's second EEOC Charge, number 523-2017-01148, the EEOC investigation exceeded more than 180 days and Plaintiff requested his Notice of Right to Sue. The EEOC issued the letter and terminated its processing of the charge.  Copies of the Letter of Determination for charge number 846-2016-14799 and the Notice of Right to Sue for charge number 532-2017-01148 are attached to this Complaint as Exhibit A.  This case is being filed within ninety (90) days of receipt of the letters.

## Jurisdiction

3.      This Court has jurisdiction pursuant to 42 U.SC. § 2000e-5(f) and 28 U.S.C. § 1331 to enforce rights guaranteed by Title VII of the 1964 Civil Rights Act (42 U.S.C. § 2000e).  This Court also has supplemental jurisdiction to hear state law claims under 28 U.S.C. § 1367.

## Parties

4.      Plaintiff, Jeffrey Reece, is an African-American male who, at all times relevant to this Complaint, Defendant employed in various capacities at its Delaware, Ohio facility.

5.      Defendant, PPG Industries Ohio, Inc., is a foreign for-profit corporation licensed to conduct business in the state of Ohio.

## Facts

6.      As of this filing, Plaintiff Reece is employed by Defendant PPG.  Defendant PPG has employed Plaintiff Reece at its Delaware, Ohio facility for approximately four and one-half (4½) years.

7.      On or about January 16, 2016, Plaintiff Reece requested to work three (3) six-hour (6) overtime shifts.  Plaintiff volunteered to work these overtime shifts by signing up through Defendant's usual overtime sign up process.

8.      The overtime shifts Plaintiff volunteered to work were all scheduled for Sunday, January 17, 2016 – 12:00 a.m. until 6:00 a.m.; 12:00 p.m. until 6:00 p.m.; and 6:00 p.m. until 12:00 a.m.

9.      Plaintiff Reece's normal, regularly scheduled work shift was 12:00 a.m. Sunday, January 17, 2016 until 7:30 a.m. Monday, January 18, 2016.

10.      Plaintiff Reece's January 16, 2016 requests to work the three (3) overtime shifts on January 17, 2016 fully complied with the established overtime practices adhered to at that time by Defendant.

11.      Plaintiff Reece's supervisor approved Plaintiff's requests to work these three (3) overtime shifts and posted Plaintiff's approved overtime shifts on Defendant's official overtime schedule.

12.      Plaintiff Reece submitted his requests to work the three (3) January 17, 2016 overtime shifts on January 16, 2016, but at no time did he ever request to work any shifts, outside of his regular schedule, on January 16, 2016.  Plaintiff Reece never considered, requested, nor contemplated working overtime on January 16, 2016.

13.      Defendant PPG, in its usual course of business, maintains two separate overtime signup lists; an initial overtime signup sheet where employees indicate their desire to work overtime and the shift they prefer, and a second "official" overtime schedule indicating the employee and their designated overtime shift that had been approved by Defendant for that specific week.

3

14. In its usual course of business, Defendant regularly and routinely, electronically scans the second "official" overtime signup sheet into Defendant's scheduling system.

15. Plaintiff Reece formally requested Defendant produce either or both of these overtime signup sheets for the period of January 16, 2016 through January 18, 2016.

16. Defendant PPG failed to produce or provide to Plaintiff Reece either of these documents indicating approved overtime shifts for the period of January 16, 2016 through January 18, 2016.

17. Defendant PPG claims the overtime signup sheets, including the electronically scanned "official" overtime schedule, for January 16, 2016 through January 18, 2018 were "lost" and are "unavailable."

18. On or about January 16, 2016, between approximately 11:30 p.m. and 11:50 p.m., Plaintiff Reece arrived to work for his scheduled January 17, 2016 12:00 a.m. – 6:00 a.m. overtime shift along with several other white coworkers whom Defendant had also approved to work overtime shifts.

19. On or about January 16, 2016 as the group of workers, including Plaintiff Reece, filed into the facility and began clocking in for their shifts, Defendant PPG's Head Supervisor Jennifer King (King), a white female, singled out Plaintiff Reece from the other workers demanding to know why Plaintiff was there clocking in for an overtime shift.

20. Plaintiff Reece was the only African-American in the group that was entering the building at that time.

21. King ordered Plaintiff Reece to go to her office, rather than allowing Plaintiff to clock in and start his scheduled overtime shift.

4

22. Earlier in the evening, King had also telephoned a second African-American employee at his home and ordered him not to report for his scheduled and approved January 17, 2016 overtime shift.

23. The only two employees of Defendant PPG who properly requested to work overtime shifts during the period of January 16, 2016 through January 18, 2016, and who received supervisor approval to work overtime shifts during this period, but whom Defendant denied the opportunity to work their requested and approved overtime shifts were Plaintiff Reece and the employee King telephoned at home – both of whom are African-American.

24. King along with Defendant PPG's Supervisor Kathy Miller and its Head of Safety Tonya Lotto discussed for more than an hour permitting Plaintiff to work the overtime shift he had requested, that had been supervisor approved, and that he had arrived at the facility to work.

25. Plaintiff commutes more than thirty (30) minutes, one way, to Defendant PPG's Delaware, Ohio facility.  Taking this fact into consideration, Ms. Lotto suggested a compromise to allow Plaintiff to work at least his first overtime shift, considering his roundtrip commute, and Plaintiff agreed to the compromise.  Nevertheless, King and Miller overruled Lotto and King forced Plaintiff to leave the facility.

26. Defendant PPG's Head Supervisor Jennifer King denied Plaintiff Reece the opportunity to work the January 17, 2016 overtime hours Plaintiff requested and received supervisor approval for – hours that were available to other white PPG employees – and forced Plaintiff Reece to leave the facility because she harbored racial animus against African-Americans, and specifically against Plaintiff Reece.

27. On or about January 27, 2016, Plaintiff Reece called Defendant PPG's ethics telephone hotline and lodged a formal complaint of race-based discrimination against Jennifer

King, citing as the basis of his allegation King's January 16, 2016 refusal to allow Plaintiff to work overtime shifts that he properly requested and had received approval to work and that were available to other white PPG employees.

28.     Defendant PPG informed each employee, including Plaintiff Reece, that complaints made through its ethics telephone hotline were confidential and that employees who called the hotline would remain anonymous.

29.     On or about February 5, 2016 an African-American coworker approached Plaintiff Reece and informed Plaintiff that their union representative, Lonnie Scott (Scott), a white male, and King had been openly discussing the substance of Plaintiff Reece's call to Defendant's ethics hotline and had been doing so in the presence of and within clear hearing distance of several other employees.

30.     Plaintiff's African-American coworker stated to Plaintiff that several employees had knowledge that Plaintiff had lodged a complaint against King through the ethics hotline, despite the fact that calls to Defendant's ethics hotline were allegedly confidential and anonymous.

31.     Plaintiff Reece's African-American coworker informed Plaintiff that Scott had shared that King "couldn't believe [Plaintiff Reece] had called the ethics hotline and accused her of being a racist."

32.     Scott also stated that King admitted that two (2) weeks after she denied Plaintiff Reece his requested, approved overtime shift, on or about January 31, 2016, King sent a white employee home when he arrived for his overtime shift and that she refused to allow this white employee to work his requested, approved overtime shift "so that it wouldn't look like she was a racist" regarding her conduct towards Plaintiff Reece on January 16, 2016.

33.     On or about that same day, February 5, 2016, immediately after learning of King's statements and admissions, Plaintiff Reece went directly to his union president, Jeff Gase, a white male, and complained to Gase that Scott – who under union representation guidelines should have been protecting Plaintiff because of his union member status – was instead withholding critical information from Plaintiff regarding his claim of race-based discrimination against King; information Scott learned from King herself.

34.     Plaintiff also complained to Gase that Scott and King had been blatantly and indiscriminately discussing in the workplace the substance of Plaintiff Reece's ethics hotline phone call – information that was allegedly supposed to be confidential and anonymous.

35.      On or about February 7, 2016, Scott approached Plaintiff Reece and confirmed to Plaintiff that King had in fact stated to Scott that she "couldn't believe [Plaintiff Reece] had called the hotline and accused her of being a racist."

36.     During this same conversation Scott also confirmed to Plaintiff that King admitted to refusing to allow a white employee to work his requested and approved January 31, 2016 overtime shift "so it wouldn't look like she was a racist" regarding her January 16, 2016 conduct towards Plaintiff.

37.     During this same conversation Scott also confirmed to Plaintiff that Scott had spoken with the white employee whom King had denied the January 31, 2016 overtime shift and confirmed to the white employee King's admission that she had attempted to cover up her racist conduct against Plaintiff Reece by denying the white employee his properly requested and approved January 31, 2016 overtime shift.

38.     On or about April 12, 2016, the white employee approached Plaintiff Reece and confided to Plaintiff what Scott had confirmed with him about King's admissions regarding why she had denied him his January 31, 2016 overtime shift.

39.     In addition to refusing to allow Plaintiff Reece to work the properly requested, supervisor approved January 17, 2016 overtime shifts, Defendant PPG's Head Supervisor Jennifer King also engaged in race-based discrimination against Plaintiff Reece by submitting a formal adverse employment action against Plaintiff Reece in the form of a write up for Plaintiff allegedly failing to show up for a January 16, 2016 shift.

40.     At no time was Plaintiff Reece scheduled to work – regular shift or overtime – on January 16, 2016.

41.     As a result of King's January 16, 2016 disciplinary action against Plaintiff Reece, Plaintiff incurred a "Step Two" disciplinary mark on his employment record; Step Two is an advanced disciplinary procedure on Defendant PPG's progressive discipline plan.

42.     Defendant PPG eventually removed both the January 16, 2016 write up from King for allegedly failing to show up for a shift, and the Step Two disciplinary action from Plaintiff Reece's employment record.

43.     Following Plaintiff's January 2016 call to Defendant PPG's ethics hotline to report King's race-based discrimination, Plaintiff incurred no less than five (5) additional disciplinary reprimands from King.

44.     Plaintiff disputed each of the disciplinary actions and refused to sign the documents.

45. After January 2016, King repeatedly issued unfounded and unwarranted disciplinary actions to Plaintiff Reece in retaliation against him for calling Defendant PPG's ethics hotline and reporting King's race-based discrimination.

46. Plaintiff Reece suffered and continues to suffer mental anguish and emotional distress because of Defendant PPG's conduct as alleged above by Plaintiff.

## CLAIMS FOR RELIEF

### First Claim for Relief
### Title VII – Employment Discrimination Based on Race; O.R.C. § 4112.02(A)

47. Plaintiff repeats, reasserts, and incorporates herein each and every allegation included above in paragraphs 1 through 46 as if rewritten here in their entirety.

48. Defendant PPG's conduct as alleged above in paragraphs 15, 16, 17, 19, 21, 22, 23, 24, 25, 26, 27, 29, 30, 31, 32, 33, 34, 35, 36, 39, 41, 43, 45, and 46 constitutes discrimination in employment based on race and violates Title VII's and the State of Ohio's prohibition on employment discrimination based on race as contemplated under 42 U.S.C. § 2000e, 42 U.S.C. § 1981, and Ohio Revised Code § 4112.02(A) and § 4112.99.

49. Defendant PPG's conduct as alleged above by Plaintiff in paragraphs 15, 16, 17, 19, 21, 22, 23, 24, 25, 26, 27, 29, 30, 31, 32, 33, 34, 35, 36, 39, 41, 43, 45, and 46 was intentional, willful, and malicious.

### Second Claim for Relief
### Title VII – Retaliation; O.R.C. § 4112.02(I)

50. Plaintiff repeats, reasserts, and incorporates herein each and every allegation included above in paragraphs 1 through 48 as if rewritten here in their entirety.

51. Defendant PPG's conduct as alleged above by Plaintiff in paragraphs 15, 16, 17, 19, 21, 22, 23, 24, 25, 26, 27, 29, 30, 31, 32, 33, 34, 35, 36, 39, 41, 43, 45, and 46 constitutes

retaliation against an employee for engaging in protected activity and violates Title VII's and the State of Ohio's prohibition on retaliation as contemplated under 42 U.S.C. § 2000e and Ohio Revised Code § 4112.02(I) and § 4112.99.

52.  Defendant PPG's conduct as alleged above by Plaintiff in paragraphs 15, 16, 17, 19, 21, 22, 23, 24, 25, 26, 27, 29, 30, 31, 32, 33, 34, 35, 36, 39, 41, 43, 45, and 46 was intentional, willful, and malicious.

<u>**Third Claim for Relief**</u>
**Title VII – Failure to Properly Maintain Personnel and Employment Records;**
**29 CFR § 1602.14**

53.  Plaintiff repeats, reasserts, and incorporates herein each and every allegation included above in paragraphs 1 through 51 as if rewritten here in their entirety.

54.  Defendant PPG's conduct as alleged above by Plaintiff in paragraphs 10, 11, 12, 13, 14, 15, 16, and 17 constitutes a failure to maintain personnel and employment records in accordance with the EEOC's Procedural Regulations, 29 CFR § 1602.14, in violation of Title VII.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE,** Plaintiff requests that this Court and the jury:

A.  Declare that Defendant has violated his rights under federal and Ohio law;

B.  Order such equitable relief as will make Plaintiff whole for Defendant's unlawful conduct;

C.  Award Plaintiff backpay and compensatory damages, punitive damages, pre and post-judgment interest, and attorney's fees and costs; and

D.  Grant any other just relief this Court deems appropriate.

10

Respectfully submitted,

*/s/C. Raphael Davis-Williams*
C. Raphael Davis-Williams (0087003)
**SPATER & DAVIS-WILLIAMS, LLC**
1188 South High Street
Columbus, Ohio 43206-3413
Phone: (614) 222-4734
Fax:    (614) 222-4738
Email: rdw@spaterlaw.com
***Trial Attorney for Plaintiff***


## JURY DEMAND

Plaintiff demands a trial by jury in this case.

*/s/C. Raphael Davis-Williams*
C. Raphael Davis-Williams (0087003)